UNITED STATES BANKRUPTCYCOURT         <u>NOT FOR PUBLICATION</u>
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                         :    Chapter 7
In re:                             :
                         :    Case No. 05-30045 (cgm)
FIBER OPTEK INTERCONNECT CORP.,    :
                         :
              Debtor.    :
                         :
-------------------------------------------------------------X
                         :
MICHAEL O'LEARY, as Trustee in Bankruptcy   :    Adv. Proc. No. 07-9015 (cgm)
for FIBER OPTEK INTERCONNECT CORP.,    :
                         :
             Plaintiff.    :
                         :
       - against -                 :
                         :
MICHAEL S. PASCAZI and           :
FRANK P. ZARZEKA,             :
             Defendants.    :
                         :
-------------------------------------------------------------X

**MEMORANDUM DECISION ON (1) MOTIONS FOR SUMMARY JUDGMENT,
(2) MOTIONS BY DEFENDANT MICHAEL S. PASCAZI TO REARGUE,
<u>AND (3) MOTION TO COMPEL ABANDONMENT OF ESTATE PROPERTY</u>**

**<u>A P P E A R A N C E S</u> :**

Evan Wiederkehr, Esq.
DelBello, Donnellan, Weingarten, Wise
    & Wiederkehr, LLP
White Plains, New York
*Special Counsel for Chapter 7 Trustee
and Counsel for Fiber Consultants, Inc.*

Michael S. Pascazi, Esq.
Fishkill, New York
*Defendant, pro se*

Nicholas A. Pascale, Esq.
Tarshis, Catania, Liberth, Mahon
    & Milligram, PLLC
*For Frank P. Zarzeka*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

The Plaintiff in this case, Chapter 7 Trustee (the "Trustee") for the above-captioned Debtor (the "Debtor" or "Fiber Optek"), moves for summary judgment based upon his amended complaint dated August 20, 2008. (Electronic Case Filing ("ECF") Doc. No. 80; the "Amended Complaint").[1]

The Amended Complaint asserts a single cause of action against defendants Michael S. Pascazi ("Mr. Pascazi") and Frank P. Zarzeka, Jr. ("Mr. Zarzeka"), two shareholders and officers of the Debtor, asserting that Mr. Pascazi and Mr. Zarzeka[2] are "collaterally estopped and subject to the principal of res judicata from denying the fraudulent conveyance defined by New York Debtor & Creditor Law § 276," based upon rulings of the New York Supreme Court and Appellate Division.

For the reasons set forth below, the Trustee's motion for summary judgment is denied, and the Court will also dismiss this adversary proceeding.  This decision also addresses three related motions filed by Mr. Pascazi, for reargument of two prior orders of this Court and for abandonment of certain estate property.

## **JURISDICTION**

This Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984.  Proceedings to determine, avoid, or recover fraudulent conveyances are "core proceedings" under 28 U.S.C. § 157(b)(2)(H).

---

[1]     Unless otherwise indicated, citations to the docket refer to the docket of the adversary proceeding.

[2]     As discussed below, the Trustee subsequently settled his claims against Zarzeka.

## BACKGROUND

### The Involuntary Chapter 7 Case

This case was commenced on February 16, 2005 as an involuntary Chapter 7 case pursuant to 11 U.S.C. § 303, filed by Mr. Pascazi, Kathleen M. Pascazi, and Enio J. Pascazi as petitioning creditors.[3]  An order for relief was entered in the case on March 14, 2005, and Michael O'Leary was appointed as the Chapter 7 Trustee.

Mr. Pascazi is an officer, director, shareholder and creditor of the Debtor and was designated, upon the Trustee's motion, as a debtor pursuant to Bankruptcy Rule 9001(5)(A)[4] for the purposes of designating an individual to testify at the meeting of creditors and to complete the bankruptcy schedules and submit other information required by Bankruptcy Rule 1007. Zarzeka is an officer, director, shareholder and creditor of the Debtor.

### The Adversary Proceeding

The core facts relied upon by the Trustee are relatively simple, and they are not disputed by either party. *See* Trustee's statement of undisputed facts pursuant to Local Bankruptcy Rule 7056-1 (ECF Doc. No. 113) and Mr. Pascazi's counter statement of facts (ECF Doc. No. 128). The undisputed facts are set forth in this Background section so that they are not lost in the more convoluted procedural aspects of the case discussed later:

---

[3]    This case was filed prior to the effective date of the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 199 Stat. 23 (2005).  This decision discusses and applies the pre-BAPCPA law.

[4]    Bankruptcy Rule 9001(5) states:

(5) "Debtor." When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person: (A) if the debtor is a corporation, "debtor" includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, or any other person in control; (B) if the debtor is a partnership, "debtor" includes any or all of its general partners or, if designated by the court, any other person in control.

– In 2003, one of Fiber Optek's creditors, Fiber Consultants, Inc. ("Consultants"), sued Fiber Optek, Pascazi and Zarzeka in the Supreme Court of the State of New York, Dutchess County (the "State Court Action"), to recover commissions earned for the labor and materials it provided to Neon. (ECF Doc. No. 115, Exh. K). The State Court Action was based upon a February 23, 1998 agreement between Consultants and Fiber Optek (the "Consultants Contract"), which required Consultants to use its best efforts to secure and maintain – for the benefit of Fiber Optek – a contract with an entity known as NEON Optica, Inc. ("Neon").[5] Amended Complaint, ¶7. In exchange, Consultants would receive 10% of all gross proceeds (except for certain "stated exclusions") of all monies actually received under such a contract with Neon. *Id.*

– Fiber Optek and Neon entered into a contract in November 1998 (the "Neon Contract"), calling for Fiber Optek to perform certain network-related work, labor and services. Amended Complaint, ¶8. Fiber Optek paid commissions to Consultants pursuant to the Consultants Contract for more than two years. *Id.*

– The Neon Contract was allegedly terminated by Neon in March 2001, and Neon sued Fiber Optek, Pascazi and Zarzeka in the United States District Court for the Southern District of New York (the "Neon Litigation"). Amended Complaint, ¶9. The Neon Litigation was settled in January 2002 for payment by Neon of $1.6 million in total proceeds, of which Mr. Pascazi and Mr. Zarzeka each received $625,000.

– In the State Court Action, Consultants claimed, among other things, that the transfers from Neon to Pascazi and Zarzeka in settlement of the Neon Litigation deprived Consultants of the 10% commission on gross proceeds that Consultants would have been entitled to if Neon had paid the full $1.6 million to Fiber Optek. The State Court Action asserted eight causes of action. The third and fourth causes of action are relevant to this case:

- In the third cause of action, against Fiber Optek, Mr. Pascazi and Mr. Zarzeka, Consultants claimed that the damages those parties asserted against Neon in the Neon Litigation were suffered by Fiber Optek, rather than Mr. Pascazi or Mr. Zarzeka. Thus, Consultants alleged, Mr. Pascazi and Mr. Zarzeka used their corporate status to direct and cause the Neon settlement to include a provision for each of them to receive $625,000 of the settlement proceeds that would otherwise be payable to Fiber Optek. Thus, Consultants claimed that the transfers of $625,000 each to Mr. Pascazi and Mr. Zarzeka were without consideration, for the purpose of avoiding Fiber Optek's obligation to pay a commission to Consultants on those amounts. Consultants concluded that the diversion of the aggregate sum of $1,250,000 was a fraudulent conveyance, which damaged

---

[5]     Neon was formerly known as Five Com, Inc. and is sometimes referred to by that name in exhibits and pleadings submitted by the parties in this case.

Consultants "**in a sum not less than $125,000**." (ECF Doc. No. 115, Exh. K, ¶51) (emphasis added).

- The fourth cause of action, against Mr. Pascazi and Mr. Zarzeka, included similar allegations and concluded that their direct receipt of $1,250,000 of the settlement proceeds from the Neon Litigation "was made to hinder and delay … Consultants' right to collect Commissions from [Fiber Optek] pursuant to the [Consultants Agreement]," a fraudulent conveyance under Section 276 of the New York Debtor & Creditor Law ("<u>DCL</u>"). (ECF Doc. No. 115, Exh. K, ¶¶54-55). Consultants claimed that the transfers to Mr. Pascazi and Mr. Zarzeka are "**void as to Fiber Consultants and should be set aside**," and that: "By reason of the aforesaid, Fiber Consultants is entitled to judgment as against Pascazi and Zarzeka **in a sum not less than $125,000**." (*Id*. at ¶¶ 56-57) (emphasis added).

– In a decision dated October 27, 2003 (ECF Doc. No. 115, Exh. O; hereafter, the "<u>State Court Decision</u>") Honorable James V. Brands granted summary judgment to Consultants on its third cause of action. Judgment was entered on this count in the amount of $125,000, plus costs and disbursements – $63,000 each against Mr. Pascazi and Mr. Zarzeka. (ECF Doc. No. 115, Exh. P; hereafter, the "<u>State Court Judgment</u>").[6]

– Fiber Optek, Mr. Pascazi and Mr. Zarzeka appealed the State Court Decision, but Mr. Zarzeka withdrew his appeal prior to oral argument. On December 8, 2003, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, issued a decision and order affirming the State Court Decision in relevant part (ECF Doc. No. 115, Exh. R; hereafter, the "<u>Appellate Court Decision</u>").

– On March 3, 2005, Justice Brands issued an order directing the Dutchess County Commissioner of Finance to release to Consultants the $63,174.85 cash undertaking that Mr. Pascazi posted in lieu of bond as part of his appeal of the State Court Decision. Justice Brands issued a decision and order dated February 28, 2006, denying Mr. Pascazi's motion to vacate the March 3, 2005 order. (ECF Doc. No. 115, Exh. V). In the course of the decision, Justice Brands, referred to the State Court Decision and stated:

> The $63,000 was awarded on [Consultants'] third cause of action alleging the misappropriation of funds as a purposeful, intentional and willful fraudulent act by the two shareholders of the defendant

---

[6]    As for Consultants' eighth cause of action, which sought an award of attorneys' fees pursuant to DCL § 276-a, Justice Brands ordered that to the extent this cause of action was applicable to Consultants' fraud claim, it was "severed, reserved and continued." Consultants obtained relief from the automatic stay in this case to pursue its post-judgment claim for attorneys' fees, costs and disbursements against Mr. Pascazi and Mr. Zarzeka. *See* this Court's order dated October 17, 2006 (Case No. 05-30045, ECF Doc. No. 53) and decision dated October 27, 2006 (Case No. 05-30045, ECF Doc. No. 57; *In re Fiber Optek Interconnect*, 2006 WL 3065521 (Bankr. S.D.N.Y. Oct. 27, 2006)).

> corporation, Michael Pascazi and Frank Zarzeka, Jr. (against whom
> plaintiff also was awarded a $63,000.00 judgment).  This court found
> Mr. Pascazi liable for an intentional fraudulent conveyance in its
> decision and order of October 27, 2003.

> *Id.*, p. 3.

In the Amended Complaint, the Trustee asks the Court to avoid the full $1.25 million

transferred to Mr. Pascazi and Mr. Zarzeka, less any amounts previously disgorged by judgment

or otherwise.  The Trustee relies on DCL § 276, which states:

### Conveyance made with intent to defraud

> Every conveyance made and every obligation incurred with actual intent, as
> distinguished from intent presumed in law, to hinder, delay, or defraud either
> present or future creditors, is fraudulent as to both present and future creditors.[7]

The Trustee alleges that the $1.25 million transfer to Mr. Pascazi and Mr. Zarzeka "was

undertaken with actual intent to hinder, delay or defraud Fiber Consultants in its effort to collect

commissions due under [the Consultants Contract], and is therefore fraudulent as to and

avoidable by all Fiber Optek's creditors." Amended Complaint, ¶35.  Consultants is the only

purported creditor relied upon by the Trustee for standing to bring this fraudulent conveyance

claim pursuant to 11 U.S.C. § 544(b). (ECF Doc. No. 128, ¶34, No. 132, ¶34).[8]  The Trustee

argues that Mr. Pascazi and Mr. Zarzeka "are collaterally estopped and subject to the principal of

res judicata from denying the fraudulent conveyance defined by [DCL] § 276," by virtue of the

State Court Decision and the Appellate Court Decision. Amended Complaint, ¶36.

---

[7]    The Trustee does not seek avoidance of these transfers under Section 548(a) of the Bankruptcy
Code as the transfers occurred more than one year prior to the petition date.

[8]    Section 544(b)(1) provides in relevant part that, "the trustee may avoid any transfer of an interest
of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured
claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of
this title."  On February 18, 2009, in response to Mr. Pascazi's objection to its proof of claim (Case No.
05-30045, ECF Doc. No. 85), Consultants filed a statement in which it calculates its claim against the
Debtor for unpaid commissions to be $111,530.21 of which it believes no less than $105,000 to be
"irrefutable." (Case No. 05-30045, ECF Doc. No. 102).  Solely for the purposes of this decision, the
Court assumes that the Trustee has standing to prosecute this fraudulent conveyance action against Mr.
Pascazi pursuant to 11 U.S.C. § 544(b).

### Zarzeka Settlement and Fee Award to Special Counsel

On September 23, 2008, the Trustee filed a motion to approve a stipulation of settlement with Mr. Zarzeka. (ECF Doc. No. 97, 98; Case No. 05-30045, ECF Doc. No. 74, 75).  In the stipulation of settlement, the Trustee proposed to release all claims against Zarzeka in exchange for an immediate payment from Zarzeka of $150,000 and a further payment of $25,000 by July 1, 2009 (Case No. 05-30045, ECF Doc. No. 74; hereafter, the "Zarzeka Settlement").  Of this amount, the law firm of DelBello, Donnellan, Weingarten, Wise & Wiederkehr, LLP ("DelBello") as "special counsel to the Trustee, pursuant to 11 U.S.C. §330(a) …" would receive one-third ($50,000) of the immediate payment, and an additional third of the $25,000 payment.  Mr. Pascazi objected to the Zarzeka Settlement and filed a "cross-motion" to disqualify DelBello as special counsel to the Trustee. (ECF Doc. No. 102; Case No. 05-30045, ECF Doc. No. 77; *see also, related pleadings and opposition at* ECF Doc. Nos. 105, 106, 107, 108; Case No. 05-30045, ECF Doc. No.79, 80).  Following a hearing on October 28, 2008, the Court overruled Mr. Pascazi's objections and signed orders approving the Zarzeka Settlement (ECF Doc. No. 110) and approving the award of compensation to DelBello (Case No. 05-30045, ECF Doc. No. 81).  Mr. Pascazi filed motions to reargue (1) his opposition to the Zarzeka Settlement (ECF Doc. No. 116) and (2) his motion to disqualify and deny compensation to DelBello (ECF Doc. No. 109; Case No. 05-30045, ECF Doc. No. 82).  Mr. Zarzeka and the Trustee filed opposition to these reargument motions. (ECF Doc. No. 119, 124, 125).

## DISCUSSION

**I.    SUMMARY JUDGMENT**

### A.    *Standards on Motion for Summary Judgment*

Pursuant to Fed. R. Civ. P. 56(c) (applicable to this adversary proceeding by Fed. R.

Bankr. P. 7056), summary judgment should be granted to the moving party if the Court

determines that "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).  A movant

has the initial burden of establishing the absence of any genuine issue of material fact. 477 U.S.

at 322-23.  When ruling upon cross-motions for summary judgment, the court must evaluate each

motion separately and must draw all reasonable inferences against the party whose motion is

under consideration. *See Coach, Inc. v. Peters*, 386 F. Supp.2d 495, 497 (S.D.N.Y. 2005).

### B.    *The Tortured Procedural History of This Adversary Proceeding*

In view of the core facts that the Trustee and his counsel had to work with when the

adversary proceeding was commenced in March 2007, this case was seemingly straightforward –

a transfer of $1.25 million by the corporate debtor to its principles for no apparent consideration.

Notwithstanding, after nearly two years, the case has made very little progress toward trial on the

estate's claims against Mr. Pascazi.  It would be easy to blame the lack of progress in this case

on Mr. Pascazi's litigious tendencies, which are evident from even the briefest review of his

many letters, oppositions, motions, cross-motions, motions for reargument, and various other

pleadings.  Without a doubt, Mr. Pascazi's defense was a major reason why the Trustee and his

counsel have been thwarted at nearly every turn.  The Trustee has the burden of prosecuting this

case.  Had the Trustee and his counsel proceeded diligently and adeptly, this would have gone a

long way toward effectively managing Mr. Pascazi; instead, the Trustee and his counsel have

conducted this case in a manner that provided Mr. Pascazi with ample fodder for opposition.

Thus, the conduct of the Trustee and his counsel has been the source of most of the delay and

most of the Court's frustration.  Mr. Pascazi's conduct merely capitalizes on the missteps of the

Trustee and his counsel, which are set forth in detail in the remainder of this section.

This adversary proceeding was originally commenced by a complaint filed on March 12,

2007 by the Trustee and the New York State Department of Labor (the "DOL"), asserting two

causes of action against Mr. Pascazi and Mr. Zarzeka for fraudulent conveyance and one claim

against Mr. Pascazi for "Fraudulent Filing of Bankruptcy Petition." (ECF Doc. No. 1).  By

application filed April 26, 2007, the Trustee sought to retain Seth Kupferberg, an assistant

attorney general for the State of New York, as special counsel for the Trustee pursuant to a

proposed "Stipulation of Retainer." (ECF Doc. No. 10; *see also* ECF Doc. No. 11; Case No. 05-

30045, Doc. No. 62, 63).  The Stipulation of Retainer cited the "uncertainty of recovery" in the

case and the estate's interest in retaining counsel "in a way which will not expend estate

resources," and proposed a joint prosecution of the adversary proceeding by which the DOL

would take the lead in pursuing the claims and bear all costs and expenses in exchange for one

third of any recovery. (ECF Doc. No. 10).  The "Stipulation of Retainer" was opposed by Mr.

Pascazi (ECF Doc. No. 15) and Mr. Zarzeka (ECF Doc. No. 11).   The Court denied the

Stipulation of Retainer without prejudice, by order dated May 9, 2007 (ECF Doc. No. 17).

The Trustee renewed the application to retain Mr. Kupferberg in June 2007 (ECF Doc.

No. 18; Case No. 05-30045, ECF Doc. No. 62), which was again opposed by Mr. Zarzeka (ECF

Doc. No. 19; Case No. 05-30045, ECF Doc. No. 64) and Mr. Pascazi (ECF Doc. No. 20, 23).

The Trustee eventually withdrew the application to employ Mr. Kupferberg on September 10, 2007 (ECF Doc. No. 28; Case No. 05-30045, ECF Doc. No. 66).

On the same day that the Trustee withdrew the Kupferberg application, he filed an application to retain DelBello as special counsel (ECF Doc. No. 29; Case No. 05-30045, ECF Doc. No. 67). The retention of DelBello was also opposed by Mr. Zarzeka (ECF Doc. No. 30, 31; Case No. 05-30045, ECF Doc. No. 68) and Mr. Pascazi (ECF Doc. No. 32), primarily on the grounds that DelBello represented Fiber Consultants, a creditor of the Debtor. The Court eventually overruled the opposition of Mr. Zarzeka and Mr. Pascazi and signed an order retaining DelBello as special counsel to the Trustee on November 8, 2007 (ECF Doc. No. 39).

Thereafter, on December 27, 2007, the Court issued a scheduling order requiring the parties to complete discovery by February 15, 2008 and to appear at a final pre-trial conference on May 6, 2008. (ECF Doc. No. 41). The dates in the scheduling order were agreed upon by all parties. Mr. Pascazi filed a motion to dismiss the adversary proceeding (ECF Doc. No. 42, 43, 51), which was denied by the Court by order dated March 27, 2008 (ECF Doc. No. 55). The Court issued a second scheduling order on March 24, 2008, requiring the parties to complete discovery by April 30, 2008 and to appear at a final pre-trial conference on July 8, 2008. (ECF Doc. No. 53). By letter to the Court dated April 25, 2008, Mr. Pascazi requested an informal discovery conference, alleging that the Trustee "has provided zero disclosure." (ECF Doc. No. 59) (emphasis in original). Pascazi noted that: "all of [Fiber Optek's] books and records, encompassing easily over 150,000 pages, are under the exclusive dominion and control of the Plaintiff, Trustee. The Plaintiff, Trustee holds all the cards." *Id.* Mr. Pascazi's letter provoked a letter in response from the Trustee's counsel on April 27, 2008, stating in part: "Pursuant to the Court's Amended Scheduling Order, discovery is to be completed by April 30, 2008. Plaintiff is

drafting and preparing responses to the outstanding discovery requests so that it may timely

respond to the demands served in this matter." (ECF Doc. No. 60). The letter from the Trustee's

counsel yielded reply letters from Mr. Pascazi, the DOL[9] and Mr. Zarzeka (ECF Doc. Nos. 61,

62 and 65, respectively). Mr. Zarzeka's counsel agreed that "the books and records are in the

sole possession of the Trustee and disclosure of same is required to determine whether the

subject transfer rendered the Debtor insolvent." (ECF Doc. No. 65). Mr. Zarzeka's counsel

suggested that the discovery dispute might be premature because the Court had directed the

parties to mediation.

As Mr. Zarzeka's counsel noted, the Court directed the parties to mediation by order

dated March 27, 2008 (ECF Doc. No. 56), and the parties agreed to a mediator (*see* Case No. 05-

30045, ECF Doc. No. 72). The Court's intent was that the parties would continue to exchange

discovery during the mediation process. No mediation ever occurred. The Court asked the

Trustee's special counsel about the progress in mediation nearly five months later:

> THE COURT: Okay. This is a request [for a] conference for a discovery dispute.
> First, I want to know the status of the mediation. I had ordered you all to
> mediation. What has happened?
>
> MR. WIEDERKEHR: Your Honor, there seems to have been a complete inability
> to get in touch with [the agreed-upon mediator], notwithstanding, so--, so
> mediation has not occurred.
>
> THE COURT: So the other people that got in touch with him and had mediation
> since that period of time?
>
> MR. WIEDERKEHR: Your Honor, I can't speak to that except for the fact - -
>
> THE COURT: I can. He was here last Wednesday.
>
> MR. WIEDERKEHR: I think Mr. Pascale will concur that we--, we certainly tried
> to coordinate something with him, but it just didn't seem to occur.

(Transcript ("Tr.") of August 19, 2008 Hearing, p. 3:8-4:1, ECF Doc. No. 89). Apparently the

Trustee reached a settlement with Mr. Zarzeka on his own during this time period, but had the

---

[9]       At that point, the DOL had not yet been dismissed as a plaintiff.

Trustee pursued mediation as the Court directed, this might have resulted in some progress with

Mr. Pascazi.  Instead, the Trustee failed to advance the estate's claim against Mr. Pascazi on

either a litigation path or a settlement path.

By letter dated May 6, 2008, Mr. Pascazi withdrew his request for a discovery conference

"based upon the Plaintiff's discovery related conduct going forward." (ECF Doc. No. 68).  On

May 2, 2008, the Court issued another scheduling order in the case (ECF Doc. No. 67, captioned

"Second Amended Scheduling Order"), which required discovery to be completed by June 13,

2008 and scheduled a final pre-trial conference for August 26, 2008.  By letter dated June 24,

2008, Mr. Pascazi again requested a discovery conference, asserting once again that:

> To date, Plaintiffs have provided zero documents and/or things to Defendant
> Pascazi . . . despite formal discovery demands . . . quite some time ago, and
> despite the books and records of the Debtor . . . being under the exclusive
> dominion and control of the Plaintiff Trustee, for over three (3) years now.

(ECF Doc. No. 69) (emphasis in original).  The Trustee's counsel did not deny the failure to

provide documents and replied that Mr. Pascazi had been invited to either go through the

documents in storage or pay for the cost of duplication of these documents. (ECF Doc. No. 72).

Mr. Pascazi filed a letter in reply (ECF Doc. No. 73) but ultimately withdrew this second

discovery request on July 15, 2008 based upon a conference Mr. Pascazi had with the Trustee's

counsel, and the Trustee's consent to dismiss two of the three causes of action in the complaint

and dismiss the DOL as a plaintiff. (ECF Doc. No. 74).

Mr. Pascazi filed a third request for a discovery conference by letter dated August 5,

2008, alleging a third time:

> To date Plaintiffs have provided zero documents and/or things to Defendant
> Pascazi, despite formal discovery demands, served by Defendant Pascazi in
> January 2008. It should be noted that the books and records of the Debtor, Fiber
> Optek. have been under the exclusive dominion and control of the Plaintiff
> Trustee for nearly three and one half (3.5) years now, yet Plaintiffs have failed to

turn over so much as cocktail napkin, including evidence of the purported
insolvency of the Debtor, at the time of the transactions complained of.

(ECF Doc. No. 75) (emphasis in original).  In response, the Trustee's counsel stated that the

Trustee would be filing an amended complaint asserting a single cause of action.  The Trustee's

counsel stated:

> With respect to the first cause of action, Plaintiff will rely upon the legal
> principles of collateral estoppel and res judicata and reference prior judicial
> findings of fact and law to prove that the defendants are liable for the subject
> fraudulent conveyance.  <u>Plaintiff will rely solely upon documents of public record
> served upon Mr. Pascazi as part of related proceedings and are within his
> possession</u>.

(ECF Doc. No. 77) (emphasis added).  In the conference following these letters, the Court

expressed frustration with the Trustee's counsel:

> THE COURT: You have an unhappy judge and it is you I am unhappy with.
>
> MR. WIEDERKEHR[10]: Forgive me, Your Honor.
>
> THE COURT: I am listening.
>
> MR. WIEDERKEHR: I certainly didn't mean to make the Court unhappy.  The--,
> there is one narrow issue that remains before this Court.
>
> THE COURT: It was not narrow until Mr. Pascazi forced you on discovery and
> you filed an Amended Complaint.  Up until that moment, it had not been
> narrowed.
>
> MR. WIEDERKEHR: Your Honor, if--, if it pleases the Court, I'm--, I'm pretty
> comfortable with the fact that I said to Mr. Pascazi on not less [than] three
> occasions that he is welcome to come to the storage locker that he personally
> assisted in putting the boxes in, take whatever documents he wants and make
> photocopies of them.
>
> THE COURT: You do understand that under the Rules of Civil Procedure
> 26(b)(1) it specifies parties may obtain discovery regarding non-privileged matter
> that is relevant to the party's claim or defense . . . but you have to come to me not
> Mr. Pascazi.
>
> MR. WIEDERKEHR: Your Honor, there is apparently a misunderstanding on my
> part then.  I--, I certainly beg the Court's indulgence because when there are
> 150,000 pages in a storage locker and Mr. Pascazi served a discovery demand
> which effectively requests thousands of pages, he was invited to do whatever he
> deemed appropriate with respect to that.  If the onus is on the Plaintiff, who is

---

[10]   The August 19, 2008 Transcript incorrectly identifies Mr. Wiederkehr as Mr. Pascale.

simply trying to bring back assets into the--, into the--, into the estate, to incur the expense of--, of copying all of these documents, then it was my misunderstanding and I do apologize, but I certainly believe that asking him on no less than three occasions to come, take what he wanted and make photocopies was a satisfactory response to his discovery demands.

THE COURT: That is not fair to Mr. Pascazi and I am not going to allow it.

MR. WIEDERKEHR: Understood, Your Honor.  At this point though, if I may, I'm not certain that it remains a viable dispute considering the fact that at this point if the Court approves the amended Complaint, the only evidence to be relied upon by the Plaintiff are documents of public record arising out of State Supreme Court litigation concerning the fraudulent conveyance.  And if the Court--

THE COURT: But, you have led Mr. Pascazi and this Court from April until August until such time as you have done that.

MR. WIEDERKEHR: Your Honor, I--

THE COURT: You did not amend that Complaint.  You did not do anything. You did not do squat and you have not done squat with this case.  You may have a wonderful, viable case, but I do not know it and Mr. Pascazi does not know it because you have not seen fit to plead it properly.  And, you have not seen fit to … amend the Complaint when I asked you to do it in April and gave you time to do it in April and you did it in August and left everything else outstanding until that time.

* * *

THE COURT: Even if this Court allows the Amended Complaint, Mr. Pascazi is still allowed relevant discovery.

MR. WIEDERKEHR: Yes, Your Honor.

THE COURT: And, you do not just open up the door and say come in.  He asked for specific things.  You give him those specific things.  And, if you do not give him those specific things, you come to this Court for a protective order and you have waived that time frame.  So you give them to him.

MR. WIEDERKEHR: Yes, Your Honor.

* * *

THE COURT: This case and its seeming inactivity for the period of time could build up to a good case for dismissal.  So, I want things moving forward and I want this case ready for trial.  If Mr. Pascazi needs a deposition, he has the right to ask, and if you don't want to give it, you have the right to come in here to me and ask for permission.  You do not have the right to simply say no to Mr. Pascazi.

* * *

THE COURT: I am so angry with the way that you have dealt with this, I am on the verge of dismissing this.

(ECF Doc. No. 89, August 19, 2008 Tr., p. 8:13-16:6).  Following the August 19, 2008

conference, the Court signed an order granting the Trustee leave to file the Amended Complaint

(ECF Doc. 81) and issued another scheduling order (ECF Doc. No. 83, captioned "Third

Amended Scheduling Order"), requiring completion of discovery by October 24, 2008 and

setting a final pre-trial conference on October 28, 2008.  Mr. Pascazi served additional document

demands on the Trustee counsel, prompting a letter from the Trustee's counsel, requesting a pre-

motion conference to permit the Trustee to move for summary judgment.  The Trustee's counsel

argued:

> The issue to be presented to the Court is whether the State Court judgment against
> Mr. Pascazi secured by Fiber Consultants, Inc. and arising out of the very same
> facts and circumstances pled in the Second Amended Complaint serves to bar Mr.
> Pascazi from raising any defenses to such claim in this Court.  The motion would
> rely largely upon legal theories of collateral estoppel and res judicata.
>
> The only documentation submitted to the Court would be those documents arising
> out of the related State Court litigation and constituting the record in said related
> litigation.
>
> It is respectfully submitted that there are no contested facts and that this matter is
> ripe for determination through the application of well settled law to irrefutable
> facts and matters of public record.

(ECF Doc. No. 91).  Mr. Pascazi replied on September 17, 2008, suggesting that "there remain

numerous issues of fact in dispute," but urging dismissal of the Amended Complaint for the

Trustee's failure to comply with his discovery requests. (ECF Doc. No. 93).  According to Mr.

Pascazi, the only documents he received from the Trustee were a copy of the claims register

from the Court's docket, and a copy of the Amended Complaint; Mr. Pascazi alleged that the

Trustee's counsel had again suggested that Mr. Pascazi come to the Trustee's storage locker and

parse through the documents. *Id*.  Mr. Pascazi also requested a pre-motion conference, contesting

the adequacy of the Trustee's response to certain discovery demands. (ECF Doc. No. 95).  The

Trustee's counsel replied by letter dated September 19, 2008, emphasizing again that the

- 15 -

Amended Complaint relied only upon matters of public record in the state court actions. (ECF

Doc. No. 96).  The Trustee concluded by stating: "Plaintiff begs leave to move for summary

judgment." *Id.*

In lieu of answering the Amended Complaint, Mr. Pascazi moved to dismiss pursuant to

Fed. R. Civ. P. 9(b) and 12(b)(6) (applicable here pursuant to Fed. R. Bankr. P. 7009 and 7012,

respectively) for failure to plead fraud with particularity and for failure to state a claim upon

which relief can be granted. (ECF Doc. No. 87, 99, 101).  Mr. Pascazi also argued that collateral

estoppel applied in his favor, based upon the same state court decisions relied upon by the

Trustee.  Mr. Pascazi also argued that the *Rooker-Feldman* doctrine[11] bars the Trustee's claim in

this adversary proceeding.  The motion to dismiss was opposed by the Trustee (ECF Doc. No.

100).

Fed. R. Civ. P. 12(d) provides:

**Result of Presenting Matters Outside the Pleadings.**  If, on a motion under
Rule 12(b)(6) or 12(c) [a request for judgment on the pleadings], matters outside
the pleadings are presented to and not excluded by the court, the motion must be
treated as one for summary judgment under Rule 56.  All parties must be given a
reasonable opportunity to present all the material that is pertinent to the motion.

Thus, the Trustee and Mr. Pascazi were both asking for a form of summary judgment.

Before authorizing the Trustee to move for summary judgment, the Court asked the following

questions of the Trustee's counsel at a conference on October 28, 2008:

THE COURT: Mr. Wiederkehr, the only cause of action that is being asserted and
the only documents that the Trustee will rely upon are the decisions issued by the
state court, is that correct?

---

[11]    Under the *Rooker-Feldman* doctrine, a federal court lacks jurisdiction to the extent that the
federal claims are "inextricably intertwined" with the state court's determinations. *Dist. of Columbia
Court of Appeals v. Feldman*, 460 U.S. 462, 482-84 n. 16, 103 S.Ct. 1301 (1983).  The Supreme Court
recently held that the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers
complaining of injuries caused by state-court judgments rendered before the district court proceedings
commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v.
Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-1522 (2005).

MR. WIEDERKEHR: Mostly correct your honor, together with other pleadings and documentation that form the records of the various appeals in which Mr. Pascazi participated and are in his possession.

THE COURT: And the Trustee's fraudulent conveyance claim will be won or lost based upon this Court's interpretation of those state court decisions?

MR. WIEDERKEHR: Yes Your Honor, and their applicability to this proceeding.

THE COURT: In other words, one way or another, this adversary proceeding will be completely resolved?

MR. WIEDERKEHR: I hope so, Your Honor.

The Court accordingly treated Mr. Pascazi's motion to dismiss as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) and set a briefing schedule for the Trustee's summary judgment motion.  Thereafter, the Trustee filed the motion for summary judgment (ECF Doc. No. 112), statement of undisputed facts pursuant to Local Bankruptcy Rule 7056-1 (ECF Doc. No. 113), memorandum of law in support of summary judgment (ECF Doc. No. 114) and Declaration of Evan Wiederkehr in support of summary judgment, with exhibits (ECF Doc. No. 115).  Mr. Pascazi filed a cross motion for summary judgment, including the counter statement of facts pursuant to Local Bankruptcy Rule 7056-1 and various exhibits (ECF Doc. 128).  In reply to Mr. Pascazi's cross motion, the Trustee filed a further declaration by Mr. Wiederkehr, with exhibits (ECF Doc. No. 130), memorandum of law (ECF Doc. No. 131) and counter statement of facts pursuant to Local Bankruptcy Rule 7056-1 (ECF Doc. No. 132).

## C.    *Summary Judgment Is Not Appropriate*

Notwithstanding the extensive exhibits and pleadings, the Trustee's argument on summary judgment is only that "application of the doctrine of collateral estoppel precludes Pascazi from asserting any defense to liability in this adversary proceeding," based upon the State Court Decision and related documents. (ECF Doc. No. 114, p. 12).[12]  "The doctrine of

---

[12]    Although the Trustee alleges in ¶36 of the Amended Complaint that Mr. Pascazi is "collaterally estopped and subject to the principal of res judicata from denying the fraudulent conveyance," the Trustee

collateral estoppel prevents a party from relitigating an issue clearly raised in a prior action and

decided against that party or those with whom they share privity." *Conte v. Justice*, 996 F.2d

1398, 1400 (2d Cir. 1993) (citation omitted).

> Under New York law, the determination of whether collateral estoppel precludes
> relitigation of an issue requires the court to pursue two general lines of inquiry.…
> Initially, the court must determine **whether the issue sought to be litigated is
> identical to an issue necessarily decided in the prior action and decisive on
> the present action**.… Upon satisfaction of the issue identity requirement, inquiry
> turns toward **whether the party to be bound had a full and fair opportunity to
> contest the determination now said to control**.

*Id.* (citations omitted) (emphasis added). To further simplify, collateral estoppel is often viewed

as a two-prong analysis, requiring a showing that an issue (1) was necessarily decided, (2) after a

full and fair opportunity to contest the determination.

The Trustee focuses on the fact that this adversary proceeding and the State Court Action

each allege a fraudulent conveyance, and that Justice Brands found Mr. Pascazi liable in the

State Court Action for an intentional fraudulent conveyance and awarded summary judgment on

that third cause of action. The Court agrees that the legal issues in this adversary proceeding and

in the State Court Action are identical, *i.e.*, an intentional fraudulent conveyance pursuant to

DCL § 276. The Court also agrees that Justice Brands necessarily decided, as part of the State

---

did not raise the issue of *res judicata* in the summary judgment motion, except as part of a block
quotation from *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487 (N.Y. 1984), a
case that discusses the doctrines of *res judicata* and collateral estoppel.

> Under both New York law and federal law, the doctrine of *res judicata,* or claim
> preclusion, provides that "[a] final judgment on the merits of an action precludes the
> parties or their privies from relitigating issues that were or could have been raised in that
> action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428,
> 69 L.Ed.2d 103 (1981). Simply put, the doctrine states that once a final judgment has
> been entered on the merits of a case, that judgment will bar any subsequent litigation by
> the same parties or those in privity with them concerning "the transaction, or series of
> connected transactions, out of which the [first] action arose." *Restatement (Second) of
> Judgments* § 24(1) (1982).

*Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). The Court cannot see how application of
the doctrine of *res judicata* would be availing to the Trustee on this summary judgment motion.

Court Action that Mr. Pascazi was liable on the theory of intentional fraudulent conveyance.  In

the State Court Decision, Justice Brands granted summary judgment against Mr. Pascazi only on

the third cause of action, resulting in a judgment against Mr. Pascazi for $62,500.  Justice Brands

did not grant summary judgment on Consultants' fourth cause of action, which requested that

Neon's transfer of $1.25 million to Mr. Pascazi and Zarzeka should be set aside.  The Trustee

acknowledges that further litigation before Justice Brands would have been necessary in order to

set aside the entire transfer:

> The [December 19, 2003] Judgment related only to summary judgment awarded
> to Fiber Consultants' [sic] on its Third Cause of Action.  **All of Fiber
> Consultants' various other claims were neither resolved nor concluded**
> pursuant to the December 2003 Decision and Order or Judgment**.** ([ECF Doc. No.
> 115], Ex. K and P).
>
> Likewise, the December 2003 Decision and Order **did not finally resolve or
> conclude Fiber Consultants' Fourth Cause of Action pursuant to New York
> Debtor and Creditor Law § 276 that sought to set aside the entire $1,250,000
> fraudulent conveyance and return this full amount to Fiber Optek.  Judge
> Brands denied Fiber Consultants' motion for summary judgment on this
> cause of action**.  But for the filing for bankruptcy protection, **further litigation
> would have been required to resolve this issue.**

(ECF Doc. No. 131, p. 3-4) (emphasis added).  The Trustee concedes that Justice Brands never

decided whether avoidance of the entire $625,000 transfer to Mr. Pascazi was warranted – the

issue was not decided at all, let alone "necessarily decided."  Justice Brands' ruling in the State

Court Decision appears to have been limited to a finding that Consultants was entitled to receive

its 10% commission on the $1.25 million transferred to Mr. Pascazi and Mr. Zarzeka – hence the

award of summary judgment for exactly 10% of that amount ($62,500 each from Mr. Pascazi

and Mr. Zarzeka, for a total of $125,000 or 10% of the $1.25 million).  In the State Court

Decision, Justice Brands viewed the issue as "whether there is justification for the defendants to

have individually received $625,000 at the time of settlement without being obligated to pay

commissions thereon to [Consultants]," and found no dispute that "had Neon paid one million

six hundred thousand dollars to the defendant, Fiber Optek, it in turn would have been obligated to pay 10 percent ($160,000.00) to [Consultants]." Thus, the issue that was "necessarily decided" by Justice Brands in the State Court Decision culminated in an award of judgment to Consultants of $125,000 ($62,500 each from Mr. Pascazi and Mr. Zarzeka). The parties do not dispute that Mr. Pascazi paid his share of the State Court Judgment to Consultants. The Trustee never explains why the issue that was "necessarily decided" in the State Court Decision compels this Court to find that Mr. Pascazi is liable for additional amounts. This issue was not "necessarily decided" for the purposes of collateral estoppel. In the State Court Decision, Justice Brands mentions in passing that "there may or may not be sufficient assets in [Fiber Optek] to satisfy any potential judgment . . . ." Justice Brands appears to have left open questions of (1) whether or not Fiber Optek was solvent, and (2) whether Mr. Pascazi and Mr. Zarzeka should have been required to pay additional amounts to Consultants in order to satisfy Consultants' claim. Consultants might have been successful in showing, *after participating in discovery and presenting evidence at a trial,* that the entire $625,000 transfer to Mr. Pascazi should be avoided; neither Consultants nor the Trustee have presented such evidence for determination by any court. Moreover, both Mr. Pascazi and Mr. Zarzeka argued that the Debtor is solvent. (*See* ECF Doc. Nos. 65 and 75). The Trustee, who is in possession of the documents relevant to this defense, has not responded to Mr. Pascazi's discovery demands, nor has the Trustee argued that solvency not be a relevant defense to the estate's fraudulent conveyance claim. Although a debtor's insolvency is not a required element for finding an intentional fraudulent conveyance pursuant to DCL § 276, *see Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86 (2d Cir. 1996), it is a factor that may be relevant in determining the scope of a creditor's recovery from the person who

received the conveyance.  DCL § 278 prescribes the rights of creditors where a fraudulent

conveyance has been established:

### § 278. Rights of creditors whose claims have matured

1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

a. **Have the conveyance set aside** or obligation annulled **to the extent necessary to satisfy his claim**, or

b. Disregard the conveyance and attach or levy execution upon the property conveyed.

2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

(emphasis added).[13] *See also Eberhard v. Marcu*, 530 F.3d 122, 134 n. 9 (2d Cir. 2008)

("[U]nder [DCL] section 276, creditors may set aside conveyances made with actual intent to

defraud, and N.Y. Debtor & Creditor Law § 278 (1)(a) provides that a creditor may have the

fraudulent conveyance 'set aside ... to the extent necessary to satisfy his claim.'"); *U.S. v.*

*Mazzeo*, 306 F. Supp.2d 294, 313-314 (E.D.N.Y. 2004) (analyzing recovery of actual fraudulent

conveyance under DCL §§ 276 and 278).  Having found a fraudulent conveyance under DCL §

276, Justice Brands granted summary judgment to Consultants on its third cause of action,

avoiding the transfer to Mr. Pascazi and Mr. Zarzeka "to the extent necessary" to satisfy

Consultants' claim – a demand for damages of $125,000.  Justice Brands did not order the

---

[13]     Concerning creditors whose claims have not matured, DCL § 279 provides:

Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may,

a. Restrain the defendant from disposing of his property.

b. Appoint a receiver to take charge of the property,

c. Set aside the conveyance or annul the obligation, or

d. Make any order which the circumstances of the case may require.

- 21 -

avoidance of the entire $1.25 million transfer to Mr. Pascazi and Mr. Zarzeka, nor was he obligated to do so under New York law. *See, e.g., Society Milion Athena v. Nat'l Bank of Greece*, 281 N.Y. 282, 293, 22 N.E.2d 374 (N.Y. 1939) (creditor in fraudulent conveyance action may have conveyance set aside to extent necessary to satisfy claim, but "is not entitled to a judgment setting it aside completely and subjecting the property of the claims of other creditors through a receiver and judicial administration of the affairs of the debtor"); *Marine Midland Bank v. Murkoff*, 508 N.Y.S.2d. 17, 23, 120 A.D.2d 122 (N.Y. App. Div. 2d Dep't. 1986) (under DCL, defrauded creditor's rights "limited to that which could have been obtained had there been no conveyance").

Because summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. *Sullivan v. U.S.*, 2007 WL 2811120 (E.D. Pa. 2007 Sept. 26, 2007); *see also Coach, Inc. v. Peters*, *supra*, 386 F. Supp.2d at 497. This consideration is underscored by the requirement in the doctrine of collateral estoppel that the party to be bound must have had a full and fair opportunity to contest the determination. Mr. Pascazi did not have a full and fair opportunity to contest the relief that the Trustee seeks in this adversary proceeding, which is the recovery of the balance of the $625,000 transfer. For the foregoing reasons, the Court concludes that the Trustee has failed to satisfy either of the two conditions for collateral estoppel, and the Trustee's motion for summary judgment must be denied.

Upon a review of the procedural posture of this case, the Court concludes that, having denied the Trustee's summary judgment motion, dismissal of this adversary proceeding is also appropriate. The Trustee has made no effort in this case to engage in discovery or to respond to Mr. Pascazi's document requests. The Trustee sidestepped his discovery obligations by filing

the Amended Complaint based entirely on documents in the public record, which he believed

compelled summary judgment based upon the theory of collateral estoppel. The summary

judgment motion was not successful, and there is nothing left in the Amended Complaint upon

which the Trustee can proceed. Mr. Pascazi's motion to dismiss the Amended Complaint, and

his cross-motion for summary judgment are therefore moot.

## II.    MR. PASCAZI'S MOTIONS TO REARGUE

Mr. Pascazi's motions for reargument are made pursuant to Fed. R. Civ. P. 59 (applicable

to this adversary proceeding pursuant to Fed. R. Bankr. P. 9023) and Local Bankruptcy Rule

9023-1.[14] "Bankruptcy Rule 9023 incorporates Federal Rule 59, which grants a court the power

---

[14]     Fed. R. Civ. P. 59 provides:

**Rule 59. New Trial; Altering or Amending a Judgment**

**(a) In General.**

**(1)** *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:

**(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

**(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

**(2)** *Further Action After a Nonjury Trial.* After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

**(b) Time to File a Motion for a New Trial.** A motion for a new trial must be filed no later than 10 days after the entry of judgment.

**(c) Time to Serve Affidavits.** When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 10 days after being served to file opposing affidavits; but that period may be extended for up to 20 days, either by the court for good cause or by the parties' stipulation. The court may permit reply affidavits.

**(d) New Trial on the Court's Initiative or for Reasons Not in the Motion.** No later than 10 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for

to alter or amend a judgment after its entry when there has been a clear error in an order of the court or if newly discovered evidence is unearthed." *In re Bradlees Stores, Inc.*, 291 B.R. 307, 312 (Bankr. S.D.N.Y. 2003).

### 1. *Reargument of Order Approving the Zarzeka Settlement*

Mr. Pascazi objects to ¶5 of the Zarzeka Settlement, which provides that:

> All claims however denominated regardless of the allegations, the facts, law, theories, or principles upon which they are based, <u>including but not limited to, claims for contribution or indemnity</u> against this settling defendant, FRANK P. ZARZEKA, by any individual, corporation, partnership, unincorporated association, or any other type of entity <u>including, but not limited to, any party to this litigation</u> in which claims now exist or have accrued or in the future may exist or accrue, and which arise out of or are in any way related to the Trustee's action or the subject matter of the Trustee's action, or arise out of or are in any way related to the Trustee's action against Mr. Zarzeka, [in this adversary proceeding] are hereby extinguished, discharged, satisfied and are otherwise unenforceable.

(emphasis added). Mr. Pascazi objected to this provision to the extent that it would limit his ability to assert claims for contribution or indemnification against Mr. Zarzeka and argued that he had received no consideration from Zarzeka in exchange for the release of contribution and indemnity claims. (Case No. 05-30045, ECF Doc. No. 77). The Trustee replied that there is "no question but that a court may approve a settlement regarding claims against one defendant and

---

a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

**(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment.

Local Bankruptcy Rule 9023-1(a) provides:

A motion for reargument of a court order determining a motion shall be served within 10 days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within 10 days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally.

enjoin non-settling defendants from asserting contribution and indemnification claims against the

settling defendant," citing only the case of *In re Munford, Inc.*, 97 F.3d 449 (11th Cir. 1996) and

the general statutory provisions set forth in 11 U.S.C. § 105(a), which authorize the Court to

issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title." The Court approved the Zarzeka Settlement pursuant to New York's General

Obligations Law ("G.O.L.") § 15-108(b). G.O.L. § 15-108, captioned "Release or covenant not

to sue," states in relevant part:

> (b) Release of tortfeasor. A release given in good faith by the injured person to
> one tortfeasor as provided in subdivision (a) relieves him from liability to any
> other person for contribution as provided in article fourteen of the civil practice
> law and rules.

"New York General Obligation Law § 15-108(b) provides that once an alleged tortfeasor is

released from liability by plaintiff, that tortfeasor cannot be sued by a non-released joint

tortfeasor for contribution. Similarly, a tortfeasor who has been released from liability may not

seek contribution from any other person." *LNC Invs., Inc. v. First Fid. Bank*, 935 F.Supp. 1333,

1349 (S.D.N.Y. 1996). A cause of action for fraudulent conveyance, alleged in this adversary

proceeding and the subject of this proposed settlement, "is a species of tort." *Sunrise Indus. Joint

Venture v. Ditric Optics, Inc.* 873 F.Supp. 765, 770 (E.D.N.Y. 1995) (citing *Hargrave v. Oki

Nursery, Inc.*, 636 F.2d 897, 898-99 (2d Cir. 1980)).

In his motion to reargue, Mr. Pascazi correctly observes that although G.O.L. § 15-108

may bar contribution claims between two tortfeasors, it does not apply to indemnification claims.

Mr. Zarzeka answers:

> There is clearly no contract between Pascazi and Zarzeka in this case, and it is
> equally manifest that if Pascazi were to be adjudged liable on the Trustee's claims
> against him it would be by virtue of his own malfeasance and not due to his legal
> relationship as a shareholder with Zarzeka in the debtor corporation. Thus there is
> no actionable indemnity claim.

(ECF Doc. No. 119).  The Trustee also argues that Mr. Pascazi has failed to reference the

existence of an agreement for indemnification or a statute upon which he relies for his alleged

claim of indemnity. (ECF Doc. No. 125).  The Trustee concludes that Mr. Pascazi "may only

rely upon a common law theory of indemnification," and that New York law does not permit

indemnity of a party who participated in wrongdoing complained of. *Id*. (citing *Kagan v. Jacobs*,

687 N.Y.S.2d 732, 260 A.D.2d 442 (N.Y. App. Div. 2d Dep't. 1999)).

In his motion to reargue, Mr. Pascazi cited cases from the Fifth, Seventh, Ninth and

Tenth Circuits, which he claims are contrary to *In re Munford*, *supra*, relied upon by the Trustee.

No party cited or discussed the Second Circuit's decision in *In re Metromedia Fiber Network,

Inc.*, 416 F.3d 136, 141-142 (2d Cir. 2005), which holds that a court may properly enjoin a

creditor from suing a third party "only in rare cases," and noted that "[n]o case has tolerated

nondebtor releases absent the finding of circumstances that may be characterized as unique."[15]

Under *Metromedia*, the Court doubts that the Zarzeka Settlement could properly release Mr.

Zarzeka from a valid indemnification claim asserted against him by Mr. Pascazi.  This concern is

purely speculative for two reasons.  First, as the Trustee and Mr. Zarzeka point out, Mr. Pascazi

has not referred the Court to any contractual right to indemnification from Mr. Zarzeka.  Second,

the Court's ruling on summary judgment renders such a claim unlikely, if Mr. Pascazi ever had

one to begin with.  Due to the absence of any showing of harm by Mr. Pascazi, the Court will not

vacate or modify the Zarzeka Settlement based purely on the theoretical possibility that Mr.

Pascazi may have a claim against Mr. Zarzeka on some unspecified basis.  Therefore, Mr.

Pascazi's motion for reargument on the Zarzeka Settlement is denied as moot.

---

[15]    After all parties failed to cite the *Metromedia* case in support of or opposition to either the
original motion to approve the Zarzeka Settlement or the motion to reargue, the Court issued a scheduling
order (ECF Doc. No. 120), inviting any party to file a pleading discussing whether the *Metromedia*
decision is applicable to this case.  Mr. Pascazi and the Trustee filed supplemental briefs on this topic
(ECF Doc. No. 122 and 125, respectively).

2.       *Reargument of Cross-Motion to Disqualify DelBello*

The Court's November 8, 2007 order retaining DelBello as special counsel for the

Trustee included the following recitation, that:

> proposed Special Counsel having indicated that his firm (1) **would continue to**
> **represent creditor Fiber Consultants, Inc.** in a Dutchess County Supreme Court
> matter seeking a judgment to fix statutory attorneys' fees against the herein
> defendants pursuant to NYS Debtor and Creditor Law § 276-a and in any
> appellate work arising therefrom, but (2) would not represent said creditor in its
> post-judgment efforts to collect on any State Court judgment entered against the
> herein defendants, **and the Court being satisfied that there is no actual conflict**
> **of interest and that said firm does not hold or represent any interest adverse**
> **to the estate <u>with respect to the matter upon which said law firm is to be</u>**
> **<u>employed</u>** . . . .

(ECF Doc. No. 39) (emphasis added).  DelBello continues to represent Consultants in this

bankruptcy case, and recently filed a pleading on Consultants' behalf in response to Mr.

Pascazi's objection to Consultants' proof of claim. (Case No. 05-30045, ECF Doc. No. 91).

In the application to retain DelBello the Trustee opined that the firm was a "disinterested

person" within the meaning of 11 U.S.C. § 101(14)[16] "notwithstanding its current involvement in

---

[16]       11 U.S.C. §101(14) defines "disinterested person" as a person that:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an
investment banker for a security of the debtor, or an attorney for such an investment
banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a
director, officer, or employee of the debtor or of an investment banker specified in
subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class
of creditors or equity security holders, by reason of any direct or indirect relationship to,
connection with, or interest in, the debtor or an investment banker specified in
subparagraph (B) or (C) of this paragraph, or for any other reason[.]

11 U.S.C. § 327(c) states:

In a case under chapter 7, 12, or 11 of this title, <u>a person is not disqualified for</u>
<u>employment under this section solely because of such person's</u> employment by or
<u>representation of a creditor</u>, unless there is objection by another creditor or the U.S.

representing a creditor as set forth in its accompanying affidavit." (Case No. 05-30045, ECF

Doc. No. 67).  The accompanying affidavit of Evan Wiederkehr disclosed that DelBello (1) act

as attorneys of record to Consultants and represented Consultants "in a matter still pending

(against defendant[s] Pascazi and Zarzeka) in Dutchess County Supreme Court . . . .," (2) acted

as counsel to Consultants as intervenors in a lawsuit commenced by Zarzeka, seeking a judicial

dissolution of Fiber Optek, (3) prepared a proof of claim filed on behalf of Consultants, filed in

this case on April 4, 2006, and (4) prepared and filed a motion in this Court on behalf of

Consultants, seeking relief from stay to permit Consultants to pursue its post-judgment claim for

attorneys' fees, costs and disbursements against Pascazi and Zarzeka. *Id.*  Neither the Trustee nor

Mr. Wiederkehr disclosed that the estate possessed counterclaims against Consultants, arising

out of the State Court Action.

      Mr. Pascazi's opposition to DelBello's retention did not discuss the counterclaims;

instead, Mr. Pascazi focused on the fact that DelBello represented a creditor in the case, which is

not an automatic disqualification.[17]  Mr. Pascazi also failed to raise the existence of the

counterclaims as an objection at the October 28, 2008 hearing, in his original cross-motion to

disqualify and in the motion to reargue.  Mr. Pascazi continues to argue for DelBello's

disqualification based upon a general allegation of "actual conflict of interest," based upon

DelBello's ongoing representation of Consultants.  As discussed above, this representation was

disclosed by DelBello in the retention application and acknowledged by the Court in the order

---

      trustee, in which case the court shall disapprove such employment <u>if there is an actual
conflict of interest</u>.

(emphasis added).

[17]     Mr. Pascazi did allude to a separate suit between the parties, arguing that DelBello failed to
disclose "that it is, and has been, representing Fiber Consultants, and Arthur Simon, as Defendants, being
sued by the Debtor, for inter alia $5,000,000.00, in New York State Supreme Court, Dutchess County,
Index number 2003- 3144." (ECF Doc. No. 32, p. 11).  The status of this action is unclear.

approving DelBello's retention.  The Bankruptcy Code expressly authorizes a trustee to retain a

professional, notwithstanding "such person's employment by or representation of a creditor," so

long as there is not "an actual conflict of interest." 11 U.S.C. § 327(c).  The other ground Mr.

Pascazi cited for disqualification and denial of compensation to DelBello was an untenable

argument that a DelBello associate, Evan Wiederkehr, would be a material witness in a

hypothetical trial to determine whether or not – as Consultants once contended and Mr. Zarzeka

disputed – those parties entered into a settlement in December 2004.  The Court overruled Mr.

Pascazi's argument on this latter point because the interests of DelBello, Consultants and the

Trustee were not in conflict, and the parties entered into the Zarzeka Settlement to avoid the very

trial that Mr. Pascazi contended was necessary before the Court could approve the Zarzeka

Settlement.

 The Court raised the issue of the estate's counterclaims against Consultants for the first

time on January 13, 2009 at a hearing on Mr. Pascazi's objection to Consultants' proof of claim.

Mr. Pascazi claimed in that motion that: "The Debtor possess [sic] a counterclaim against

[Consultants] for *inter alia* offset, breach of contract, and breach of fiduciary duty, in the amount

of $5,000,000.00…." (Case No. 05-30045, ECF Doc. No. 85).  In his counterstatement of facts

on the summary judgment motion, Mr. Pascazi alleged: "There exist significant counterclaims

against Fiber Consultants in the state court action.  Those counterclaims have yet to be tried in

any court." (ECF Doc. No. 128, ¶44).  The Trustee responded: "Admit that counterclaims were

asserted against Fiber Consultants in the State Court action and that they have not been the

subject of a trial." (ECF Doc. No. 132, ¶44).  Mr. Pascazi also alleged in his counterstatement of

facts that: "It is possible that judgment on the counterclaims could far exceed the judgment

secured by Fiber Consultants.  In fact, some of the counterclaims seek over $7,500,000.00 in

damages." (ECF Doc. No. 128, ¶45)  The Trustee responded: "Admit that solely by reason of the

amounts claimed, recover on the counterclaims, if any, could possibly exceed $125,000." (ECF

Doc. No. 132, ¶45).  In a recent statement requested by the Court, the Trustee confirmed that the

estate's counterclaims against Consultants are still viable, though he considers their value to be

slight:

> Mr. Pascazi has made an offer to purchase the debtor's "claims" against
> [Consultants] (which have already been pleaded in the State Court litigation) for
> $2,000.00.  This minimal offer may speak volumes as to their value.  Although
> the Trustee finds these claims to not be worthy of pursuit, if a surplus is not
> created by the administration of the assets of this estate, the Trustee remains open
> to conducting a private sale of said claim, open to all parties of interest (including
> [Consultants]) after the conclusion of this litigation.

(Case No. 05-30045, ECF Doc. No. 98).  The Trustee also acknowledged that his decision was

based upon the need to "prove the existence of a present or future creditor" in order to maintain

this adversary proceeding, and that:

> The cooperation of [Consultants] is necessary for the prosecution of the
> Adversary Proceeding, and it would be prejudicial to the estate's proper
> prosecution of said claim if its "witness" was having its time and resources
> drained in State Court litigation being simultaneously prosecuted by a nominee of
> the debtor.

*Id*.

As an initial matter, the estate's counterclaims against Consultants should have been

specifically disclosed in DelBello's retention application.  Fed. R. Bankr. P. 2014(a) requires

professionals who seek employment on behalf of the estate to disclose "to the best of the

applicant's knowledge, all of the person's connections with the debtor, creditors, and any other

party in interest . . . ."  "Coy or incomplete disclosures which leave the court to ferret out

pertinent information from other sources are not sufficient." *In re Saturley*, 131 B.R. 509, 517

(Bankr. D. Me. 1991) (referring to required disclosure of compensation arrangements).  DelBello

simultaneously represents the estate and Consultants.  As first became evident to the Court in

January 2009, the estate possesses counterclaims against Consultants, but the estate is not

actively pursuing the claims at this time, and DelBello has not been retained to represent the

estate with regard to those counterclaims.

A professional employed under 11 U.S.C. § 327 must not "hold or represent an interest

adverse to the estate" under Section 327(a), and if the professional is employed by or represents

a creditor, there must be no "actual conflict of interest."  The Second Circuit has adopted the

following definition of the phrase "hold or represent an interest adverse to the estate":

> (1) to possess or assert any economic interest that would tend to lessen the value
> of the bankruptcy estate or that would create either an actual or potential dispute
> in which the estate is a rival claimant; or (2) to possess a predisposition under
> circumstances that render such a bias against the estate.

*In re AroChem Corp.*, 176 F.3d 610, 623 (2d Cir. 1999) (quoting *In re Roberts*, 46 B.R. 815

(Bankr. D. Utah 1985)).

Bankruptcy courts have the discretion to deny allowance of compensation to a

professional employed under Bankruptcy Code Section 327 "if, at any time during such

professional person's employment under section 327 . . . such professional person is not a

disinterested person, or represents or holds an interest adverse to the interest of the estate with

respect to the matter on which such professional person is employed."  11 U.S.C. § 328(c)

(emphasis added).  The Court notes the use of the words "may deny allowance of compensation"

in Section 328(c).  "Section 328(c) authorizes but does not necessarily mandate the denial of all

fees; it is permissive in nature and committed to the discretion of the Court." *In re Granite

Partners, L.P.*, 219 B.R. 22, 41 (Bankr. S.D.N.Y. 1998).

The Court has taken the opportunity to express displeasure that the Trustee and DelBello

did not disclose the existence of the estate's counterclaims against Consultants at the outset.  The

Court does not believe that denial of compensation to DelBello from the Zarzeka Settlement is

- 31 -

compelled by Section 328(c) or that it is warranted under the circumstances of this case. The Court will therefore deny Mr. Pascazi's motion to reargue to the extent it seeks denial of compensation to DelBello from the proceeds of the Zarzeka Settlement. Section 328(c) gives the Court discretion (which the Court may elect not to exercise) to deny compensation to a professional, provided that the Court finds that the professional represents an interest that is adverse to the estate concerning "the matter on which such professional person is employed." Even if DelBello could be construed as representing an interest adverse to the estate in the matter upon which it has been employed, in view of the entire record of these proceedings the Court would decline to exercise its discretion to deny compensation to DelBello from the proceeds of the Zarzeka Settlement.

Whether to deny compensation under Section 328(c) is a different question from whether or not DelBello should be permitted to continue to represent the estate and Consultants simultaneously. The Court is not required to decide this issue, because this summary judgment decision will result in dismissal of the adversary proceeding, presumably concluding DelBello's representation of the estate. Mr. Pascazi's motion to disqualify DelBello from future representation of the estate is therefore moot and denied on that basis.

## III.    MOTION TO ABANDON

On December 8, 2008, after the Court approved the Zarzeka Settlement, Mr. Pascazi filed a motion to compel the Trustee to abandon the estate's "shareholder derivative action" against Mr. Zarzeka for alleged breach of fiduciary duty to the Debtor, "usurped corporate opportunity" and "civil conversion." (Case No. 05-30045, ECF Doc. No. 90). Mr. Pascazi's motion to abandon is denied to the extent he seeks to continue the action against Mr. Zarzeka, because the

estate *does* have the right to waive the estate's claims against Mr. Zarzeka and did so in the Zarzeka Settlement.

Mr. Pascazi also claims that "there are about six other distinct additional entities that are also named defendants, relating to *inter alia* causes of action for aiding and abetting, and civil conspiracy theories, as well as principal actor liability."  As no party has filed opposition, the motion to abandon is granted to the extent that these claims may be pursued without proceeding against Zarzeka – an issue upon which this Court has not been asked to take a position.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will issue an order (1) denying the Trustee's motion for summary judgment, (2) dismissing the above-captioned adversary proceeding, (3) denying as moot Mr. Pascazi's motion to reargue approval of the Zarzeka Settlement, (4) denying Mr. Pascazi's motion to reargue the award of compensation to DelBello from proceeds of the Zarzeka Settlement, (5) denying as moot Mr. Pascazi's motion to disqualify DelBello from future representation of the estate in this case, and (6) partially denying Mr. Pascazi's motion to abandon.

Dated: Poughkeepsie, New York
    March 4, 2009                    ___/s/ Cecelia Morris_____
                                     CECELIA G. MORRIS
                                     UNITED STATES BANKRUPTCY JUDGE